# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ISMAEL FORD-BEY,

        Plaintiff,

        v.

UNITED STATES OF AMERICA,

        Defendant.

Civil Action No. 19-2039 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff Ismael Ford-Bey, proceeding *pro se*, filed a motion in February, 2019 pursuant to Federal Rule of Criminal Procedure 41(g) seeking the return of personal property that he alleges was seized from his residence in Washington, D.C. and his girlfriend's residence in Alexandria, Virginia, almost seven years earlier in August, 2012, by Drug Enforcement Administration ("DEA") agents. Pl.'s Mot. for Return of Property ("Pl.'s Mot.") at 1, ECF No. 1.[1] The motion was originally filed in the U.S. District Court for the District of Maryland, where, in 2014, the defendant pleaded guilty to seven counts related to a conspiracy to distribute cocaine and to commit money laundering and consented to the forfeiture of certain property and funds derived from his criminal conduct. *See* Transcript of Plea Hearing ("Maryland Plea H'rg Tr.") at 7:14–17:18, 41:14–24, United States v. Ford-Bey, No. 13-cr-492-DKC (D. Md. Dec. 1, 2014), ECF No. 218. The U.S. District Court for the District of Maryland, at the government's suggestion, transferred the motion to this Court after concluding that the property the plaintiff sought was seized in Washington, D.C., and "a Rule 41(g) motion must be filed in the district where the property was seized." *See* Order dated July 9, 2019 ("Maryland Order") at 1, ECF No.

---

[1]     The plaintiff's own spelling of his name is adopted here, although filings associated with his underlying criminal conviction refer to him as "Ishmael" rather than "Ismael" Ford-Bey.

13.  The government, after being directed to file supplemental responses to the plaintiff's motion, *see* Min. Orders (July 11, 2019 and September 17, 2019), has now filed a "Motion to Dismiss *and* Supplemental Response," arguing, *inter alia*, that the plaintiff's property has been forfeited, with notice to the plaintiff, as part of his criminal proceedings in Maryland and through administrative forfeiture by the DEA.  *See* Gov't's Mot. to Dismiss & Suppl. Resp. at 3 ("Gov't's Mot."), ECF No. 18 (emphasis in original).  For the reasons discussed below, the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), will be granted in part, denied in part, and the government's suggestion for yet another transfer to a third district court will be denied.  *Id*. at 6–7.

## I.      BACKGROUND

This action centers around the seizure of a number of the plaintiff's possessions during the investigation of a large drug distribution conspiracy.  The events leading to those seizures and the administrative and judicial proceedings surrounding the forfeiture of some of those items are thus relevant to the disposition of the government's instant motion to dismiss.  In addition, the procedural details of the plaintiff's request for the return of his property inform the resolution of this dispute.  These circumstances are thus each discussed in turn.

### A.      Factual Background

During an August 15, 2012 traffic stop in Texas, the Texas Department of Public Safety conducted a search of a refrigerated box truck.  Gov't's Notice of Suppl. Exs. in Supp. of Mot. to Dismiss, Ex. 1 ("Gov't's Suppl. Exs.") at 8, ECF No. 21–1.  That search revealed that the truck was hauling multiple kilograms of cocaine to Prince George's County, Maryland.  *Id*.  The truck was allowed to continue on its way.  *Id*.  Upon arrival in Maryland, on August 17, 2012, the truck was met by the plaintiff, who was observed by law enforcement unloading the cocaine into his car.  *Id*.  As law enforcement moved to intercept, the plaintiff drove on, setting off a high-

speed chase. *Id.* After crashing his car into a median strip, the plaintiff successfully fled on foot. *Id.* Law enforcement at the scene recovered "13 boxes of suspected cocaine" from his car. *Id.* at 19.

### 1. Seizures

That same day, DEA Agents acquired state search warrants for both the plaintiff's residence in Washington, D.C. and his girlfriend's apartment in Alexandria, Virginia. *Id.* at 8, 19. Upon executing those warrants, the Agents seized several highly valuable items, including at least one luxury vehicle, several watches and other assorted pieces of jewelry, and handbags. *See* Memorandum of Points and Auths. in Support of Mot. to Return Property ("Pl.'s Mem.") at 2, 5, ECF No. 1-1; Gov't's Opp'n to Pl's Rule 41(g) Mot. ("Gov't's Opp'n") at 2, ECF No. 6; Gov't's Mot. at 7; Gov't's Suppl. Exs. at 2–31; Maryland Plea H'rg Tr. at 32:17–33:7. The items were sent for appraisal and placed in "high value asset storage." Gov't's Suppl. Exs. at 8.

### 2. Administrative Forfeiture Proceedings Prior to Plaintiff's Arrest

Although the plaintiff was not yet in police custody, the DEA initiated procedures to forfeit the seized items. *See, e.g.,* Gov't's Suppl. Exs. at 2–31. Under those procedures, the DEA assigned separate case numbers to the various items, based apparently in part on the location where the items were seized. *See* Gov't's Reply in Support of Mot. to Dismiss and Resp. to the Court's September 17, 2019 Order ("Gov't's Reply"), Ex. 1 ("Zekoski Decl.") at 2, ECF No. 29-1. As relevant to the instant motion, the items were grouped as follows: (1) a 2011 Maserati Gran Turismo valued at $132,000, which was seized on August 17, 2012 from Ford-Bey in Washington, D.C., *id.* at 77; (2) assorted watches and jewelry valued at $22,400, which were seized on August 17, 2012 from Ford-Bey's girlfriend's apartment in Alexandria, Virginia,

*id.* at 48–49; and (3) assorted watches and jewelry valued at $173,900,[2] which were seized on

August 17, 2012 from Ford-Bey's apartment in Washington, D.C., *id.* at 16–17, 37–39.[3]

For each of the DEA cases, the Agency attempted to provide notice to the plaintiff and

anyone else who might have an interest in the seized property of the government's intent to

forfeit the items pursuant to 21 U.S.C. § 881. *See, e.g., id.* at 16. With respect to the plaintiff's

car, the Agency sent notice, on September 28, 2012, to three separate addresses, in Mitchellville,

Maryland, Alexandria, Virginia, and Washington, D.C., associated with the plaintiff. *Id.* at 11–

12, 77–88 (documenting notices sent). Notices sent to the plaintiff's D.C. apartment and a

separate Mitchellville, Maryland residence were delivered. *Id.* at 78–79, 81–82. One of the

notices, sent to the plaintiff's girlfriend's apartment in Alexandria, Virginia, was returned as

unclaimed. *Id.* at 84–85. Just to be certain, the Agency tried to reach the plaintiff at the

Alexandria, Virginia address one final time on December 11, 2012, but that notice, too, was

returned. *Id.* at 104–05. A similar method was used to notify the plaintiff of the Agency's intent

to forfeit the assorted watches and jewelry seized from his D.C. apartment and from his

girlfriend's Alexandria apartment. On October 9, 2012, the Agency sent separate notices of its

intent to forfeit the items seized from the plaintiff at his girlfriend's apartment to the same D.C.,

Maryland, and Virginia residences, but only the notice sent to D.C. was delivered. *Id.* at 46–47,

---

[2]    This set of watches and jewelry was initially valued at $555,490, but a subsequent appraisal by the U.S. Marshals Service assessed the value of the property to be much lower. Zekoski Decl. at 2 n.1.

[3]    The government's submissions reveal several other items were seized from the plaintiff on August 17, 2012, including various designer and counterfeit designer bags, U.S. currency, and a 2011 Land Rover. *See* Gov't's Reply at 9 n.4; Gov't's Reply, Ex. VI, ECF No. 29-7. Two bank accounts were also seized from the plaintiff on September 6, 2012. Gov't's Reply, Ex. VI. The plaintiff does not appear to make a claim for any of this property, *see* Pl.'s Mot., Ex. 1, ECF No. 1-2, so those seizures are neither relevant to nor considered in this ruling. Several items were seized by the DEA on August 20, 2013, but those items are also not claimed by the plaintiff in the instant action, perhaps because those items are associated with the plaintiff's co-defendants, who were charged with offenses occurring on or about that date. *See* Gov't's Mot., Ex. A ("Superseding Indictment") at 7–8, ECF No. 18-1.

50–51, 54–55.[4]  On December 11, 2012, the Agency re-sent notices to the Maryland and Virginia addresses, but neither notice was delivered.  *Id*. at 61, 64.[5]  Finally, on October 16, 2012, the Agency sent three separate notices of its intent to forfeit the items seized from the plaintiff's D.C. apartment to those same D.C., Maryland, and Virginia addresses.  Again, only the notice sent to the D.C. address was delivered.  *Id*. at 18–19, 22–23, 26–27.  When, on December 11, 2012, the Agency re-sent notices to the Maryland and Virginia addresses, those too were returned.  *Id*. at 33, 36.

While attempting to notify the plaintiff personally of the government's intent to forfeit the seized property, the Agency was also casting a wider net.  For each DEA case number, notices were printed in the Wall Street Journal for three consecutive weeks, listing the place of the seizure, who the property was seized from, and what property was seized.  A notice related to the plaintiff's car began running on October 15, 2012 and was reprinted on October 22 and 29.  *Id*. at 12–13, 89–90.  A notice related to the items seized from the plaintiff's girlfriend's apartment began running on October 22, 2012 and was reprinted on October 29 and November 5.  *Id*. at 8, 56–58.  Finally, a notice related to the items seized from the plaintiff's D.C. apartment was first published on October 29, 2012 and reprinted on November 5 and 12.  *Id*. at 4, 28–30.

The plaintiff, who was still a fugitive, never responded to any of these notices and never filed a claim in the administrative proceedings.  The only response the DEA received was a

---

[4]  The government's exhibits claim that the October 9, 2012 notice addressed to the plaintiff at a Mitchellville, Maryland address was delivered, but the evidence cited in support of that assertion is a printout of United States Postal Service ("USPS") tracking information related to a tracking number that is different from the tracking number associated with the notice sent to that address.  *Compare* Zekoski Decl. at 46 *with id*. at 47.  In any case, the tracking number highlighted by the government on the USPS printout shows that it was delivered to Quantico, Virginia, not Maryland.  *Id*. at 47.  A separate printout of USPS tracking information does display the correct tracking number but lists the status of the notice as "Arrival at Unit," not "Delivered."  *Id*. at 51.  Without more, the evidence is insufficient to find that the October 9, 2019 notice sent to Mitchellville, Maryland was in fact delivered.

[5]  The Agency also sent notice to a woman residing in Largo, Maryland which was also returned undelivered.  Zekoski Decl. at 70–71.  As this case concerns the plaintiff's receipt of notice, that fact is immaterial.

petition for remission/mitigation filed by SunTrust bank, which asked for reimbursement for the remainder due under the financing agreement it had for the Maserati. *Id*. at 92–94. After no other claims were filed, the Agency declared the property forfeited in three separate declarations of forfeiture. *Id*. at 75–76 (Decl. of Forfeiture dated February 21, 2013, forfeiting the items seized from the plaintiff's girlfriend's apartment); *id*. at 106 (Decl. of Forfeiture dated February 26, 2013, forfeiting the plaintiff's car); *id.* at 37–39 (Decl. of Forfeiture dated March 22, 2013, forfeiting the items seized from the plaintiff's D.C. apartment).[6] According to the government, the forfeited property has been sold or liquidated. *See* Gov't's Reply, Ex. III ("DEA Property Tracking Chart") at 1–5, ECF No. 29-4.

### 3. The Plaintiff is Arrested, Made Aware the Government Sought Forfeiture, Pleads Guilty, and Is Sentenced

After forfeiture proceedings were completed, law enforcement finally caught up with the plaintiff and arrested him on August 16, 2013, when a car, in which he was a passenger, was pulled over by Maryland state police. *See* Brief of Appellee at 5, United States v. Ford-Bey, No. 15-4347 (4th Cir. 2016), 2016 WL 2604994; Brief for Appellant at 5, United States v. Ford-Bey, No. 15-4347 (4th Cir. 2016), 2016 WL 949779. One of the plaintiff's co-conspirators had already been indicted by that point and, on February 24, 2014, a superseding indictment was filed in the U.S. District Court for the District of Maryland adding the plaintiff and charging him and three co-defendants with conspiracy to distribute narcotics and conspiracy to commit money laundering. *See* Superseding Indictment; *see also* Indictment, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. Sept. 16, 2013), ECF No. 9. The superseding indictment included a criminal forfeiture allegation giving notice, pursuant to Federal Rule of Criminal Procedure 32.2, that if the

---

[6]    On May 22, 2013, the DEA granted SunTrust Bank's petition, allowing them to recover up to $40,076.97 (the remaining amount owed under the plaintiff's financing agreement). Zekoski Decl. at 14.

defendants were convicted, the government would seek forfeiture of property derived from, involved in, or traceable to the charged narcotics and money laundering offenses. *See* Superseding Indictment at 18–23 (citing 21 U.S.C. § 853(a) (forfeiture pursuant to narcotics offense), 18 U.S.C. § 982(a)(1) (forfeiture pursuant to money laundering offense) and 28 U.S.C. § 2461(c) (mode of recovery)). This property included at least $108,000,000, Superseding Indictment at 18, 21, money from certain bank accounts, *id.* at 19, 21, $185,000 in assorted jewelry, *id.* at 19, 21, a 2013 Audi SS Quattro vehicle, *id.* at 20–21, and $24,565 in assorted clothing items, *id.*[7] The government also sought substitute property if, through an act or omission of a defendant in that criminal case, the property subject to forfeiture could not be located, had been substantially diminished in value, or was otherwise unavailable to be forfeited. *Id.* at 22–23 (citing 18 U.S.C. § 853(p)).

On December 1, 2014, the plaintiff pleaded guilty to seven counts of the superseding indictment. *See* Maryland Plea H'rg Tr. at 7:14–17:18.[8] The factual proffer signed as part of the plaintiff's plea indicated that the plaintiff "does not oppose the narcotics forfeiture provision set forth in the Superseding Indictment" and "does not oppose the money laundering provision set forth in the Superseding Indictment." Gov't's Mot., Ex. B ("Factual Proffer") at 27, ECF No.

---

[7] The superseding indictment also listed forfeiture of a designer bag and belt, $725 in U.S. currency and $25,695 in assorted jewelry, all of which was seized on or about August 20, 2013, Superseding Indictment at 20–21, along with an additional $823,640 in U.S. currency and jewelry seized on or about October 1, 2013, *id.* at 21. As noted above, the plaintiff's complaint focuses solely on the searches and seizures that occurred on August 17, 2012. Pl.'s Mot. at 1. The items seized on other dates, therefore, are irrelevant to the instant motion. In any case, items listed in the superseding indictment and seized on August 20 and October 1, 2013 were seized not from the plaintiff but from his three co-defendants. *See supra* Note 3.

[8] The plaintiff pleaded guilty to: Count 1, conspiracy to distribute and possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846; Counts 2 and 3, using a telecommunications facility in furtherance of Count One, in violation of 21 U.S.C. § 843(b); Count Four, possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); Count 5, possession with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1); Count 8, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and Count 9, money laundering, in violation of 18 U.S.C. § 1956(a)(1). *See* Maryland Plea H'rg Tr. at 7:14–17:18; Judgment & Conviction at 1–2, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. June 5, 2015), ECF No. 179.

18-1.[9]  Likewise, at his plea hearing, the plaintiff expressly stated that he did not contest the forfeiture allegations included in the superseding indictment.  *See* Maryland Plea H'rg Tr. at 41:14–24 (government counsel: "According to the Defendant's factual proffer . . . he is not contesting, he is not opposing the forfeiture provisions that are included in the Indictment?," Court asking: "You understand the Government is seeking forfeiture from you[?]," and plaintiff responding: "Yes, Your Honor.").

On December 1, 2014, the same day that the plaintiff pleaded guilty, the district court issued a Preliminary Order of Forfeiture against the plaintiff.  *See* Gov't's Mot., Ex. C ("Order of Forfeiture") at 37–40, ECF No. 18-1.  Upon entry of the order, the government was "authorized to seize the forfeited property" and to "commence any applicable proceeding to comply with statutes governing third party rights, including giving notice of this Order."  *Id.* at 39–40. Further, the government was directed to "publish notice of this Order in accordance with 21 U.S.C. § 853(n)(1)."  *Id.*  The Order would become final at the time of sentencing.  *Id.*

On June 5, 2015, the plaintiff was sentenced to 396 months of incarceration, followed by 10 years of supervised release.  *See* Judgment & Conviction at 3–4, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. June 5, 2015), ECF No. 179.  The preliminary forfeiture order became final that day and was attached to the defendant's Judgment and Conviction Order.  *See id.*, Att. 1, Order of Forfeiture at 1–4, ECF No. 179-1; Transcript of Sentencing Hearing ("Sentencing H'rg Tr.") at 130:24–131:8, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. June 4, 2015), ECF No. 222.  In reference to the administrative forfeiture proceedings that concluded prior to the defendant's arrest, the government's sentencing memorandum informed the plaintiff that the DEA had

---

[9]     The government's exhibits in support of its motion to dismiss were compiled in one document.  For ease of review, citations to these exhibits adopt the pagination assigned by the Court's Case Management-Electronic Case File ("CM-ECF") system.

administratively forfeited certain property that was seized from him.  Gov't's Reply, Ex. V

("Gov't's Sentencing Mem.") at 30, ECF No. 29-6 (explaining that certain "high value assets . . .

were seized and forfeited by the DEA" after "[n]o claims were filed regarding the seized

property").

In 2016, the plaintiff's sentence was vacated by the Fourth Circuit, which held that a

firearm enhancement had been improperly applied.  *United States v. Ford-Bey*, 657 F. App'x

219, 219–22 (4th Cir. 2016) (per curiam).  On remand, on January 31, 2017, the plaintiff was

resentenced to 360 months of incarceration and 10 years of supervised release.  *See* Amend.

Judgment & Conviction at 2–3, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. Jan. 31, 2017), ECF No.

401.  The same final forfeiture order was attached to this amended judgment.  *See id.*, Att. 1,

Order of Forfeiture at 1–4, ECF No. 401-1.[10]

### B.      Procedural Background to Instant Action

On February 19, 2019, the plaintiff filed a "Motion for Return of Property Pursuant to

F.R.C.P. Rule 41(g)."  Pl.'s Mot. at 1.  An "Exhibits List" attached to the motion listed 49 items

he says were seized during the August 17, 2012 searches of his and his girlfriend's apartments.

Pl.'s Mot., Ex. 1, Exhibits List in Support of Rule 41(g) Mot. ("Pl.'s List"), ECF No. 1-2.  The

plaintiff seeks the return of these 49 items, which he alleges were seized as part of an unlawful

search and seizure and were then forfeited, without notice, or not forfeited at all.  Pl.'s Mem. at

9.  The 49 items, as listed by the plaintiff on the Exhibits List attached to his Motion, are:

> [#1.] Maserati Granturismo;
> [#2.] Rolex GMT;
> [#3.] Rolex Rose Gold Presidential;

---

[10]     That Order directed the United States Attorney General to publish notice of the forfeiture order "in
accordance with 21 U.S.C. § 853(n)(1)."  *See* Amend. Judgment & Conviction, Att. 1, Order of Forfeiture at 4,
*Ford-Bey*, No. 13-cr-492-DKC (D. Md. Jan. 31, 2017), ECF No. 401-1.  A review of the Maryland docket does not
reveal whether such notice was published nor whether any third party "assert[ed] a legal interest in [the] property . . .
within thirty days of the final publication of [that] notice" pursuant to the statute.  21 U.S.C. § 853(n)(2).

[#4.] Rolex Yachtmaster II;
[#5.] Rolex 50th Anniversary;
[#6.] Audemars Piguet Royal Oak (black);
[#7.] Audemars Piguet (yellow gold with yellow diamonds);
[#8.] Audemars Piguet (volcano orange);
[#9.] Hublot Big Bang (rose gold with diamonds/white band);
[#10.] Hublot Fruity Tootie (red with rose gold and rubies);
[#11.] Hublot Limited Edition (tennis watch);
[#12.] Bulgari (yellow gold with black strap);
[#13.] Briethlin (stainless steel with rubber strap);
[#14.] Louis Vuitton Sky Blue Limited Edition;
[#15.] Louis Vuitton Brown Watch;
[#16.] Concord (stainless steel with diamond bezel);
[#17.] 6 carat diamond ring in rose gold setting;
[#18.] 2.5 carat diamond ring white gold;
[#19.] Diamond Tennis Bracelet;
[#20.] Diamond Tennis Necklace & charm;
[#21.] Yellow Gold & Diamond Necklace & Charm;
[#22.] Yellow Gold Necklace with Louis Vuitton Diamond Charm;
[#23.] Rose Gold Necklace with Dog Tags;
[#24.] Stainless Steel with Black Diamond Charm (David Yurman);
[#25.] Bulgari Yellow Gold & Diamond Cufflinks;
[#26.] Stainless Steel & Black Hermes Cufflinks;
[#27.] Cherrywood Ralph Lauren Cherrywood Bar;
[#28.] Versace Plates, Champagne Glasses & Silverware;
[#29.] White Llama Rug;
[#30.] Louis the 13th (1 bottle);
[#31.] Vintage Magnum Bottle of Cristal;
[#32.] Gucci Full Length Fur Coat;
[#33.] Gucci Tuxedo;
[#34.] Ralph Lauren Chocolate Tuxedo;
[#35.] Ralph Lauren three-piece cashmere suit;
[#36.] Ralph Lauren three-piece gray suit;
[#37.] Ralph Lauren two-piece blue suit;
[#38.] Ralph Lauren pink blazer with gold buttons;
[#39.] Ralph Lauren crocodile loafers (4 pairs);
[#40.] Louis Vuitton silk baseball jacket (brown);
[#41.] Louis Vuitton silk baseball jacket (blue & red);
[#42.] Louis Vuitton crocodile loafers (2 pairs);
[#43.] Black leather winter bomber jacket;
[#44.] Blue leather Gucci jacket;
[#45.] Red/Orange leather Gucci jacket;
[#46.] White leather Gucci jacket;
[#47.] Purple Label blue leather Ralph Lauren Leather;
[#48.] Several other suits, ties, shoes, beds, tables, boots, sweaters, TVs, jeans, jackets, coasts [sic], dress shirts, etc. (totaling $175k);

[#49.] Gucci Bike.

Pl.'s List at 1. The list includes estimates of the value of each item and indicates that, in total, the items are worth approximately $1,243,700. *Id.*

The government styled its response to this motion an "Opposition to Plaintiff's Rule 41(g) Motion," Gov't's Opp'n at 1, and argued that the motion had been filed in the improper venue, was untimely, and lacked merit. *Id*. at 2–3. The District Court for the District of Maryland agreed with the government that the "motion" had been improperly filed in that District and transferred the case to this Court. Maryland Order at 1.

After ordered to do so, Min. Order (July 11, 2019), the government filed another response to the plaintiff's motion in this Court, styling its filing as a "Motion to Dismiss *and* Supplemental Response to its Opposition to Plaintiff's Fed. R. Crim. P. 41(g) Motion," Gov't's Mot. at 1 (emphasis in original). On September 17, 2019, the government was ordered to produce a fuller record of the seizure and forfeiture of the plaintiff's property, Min. Order (Sept. 17, 2019), by detailing, as to each of the 49 items on the Exhibits List, (1) whether that item is listed in the superseding indictment and, if so, where, (2) whether the item is listed in a declaration of forfeiture and, if so, where, (3) whether that item was never seized, already returned, or if there is no record associated with the item, (4) whether the government sent notice by certified mail or otherwise provided notice to the plaintiff informing him of its intent to forfeit the item, (5) whether the government published a notice of forfeiture in a newspaper, and (6) if no notice was provided of the item's forfeiture, why the government would not have been required to provide such notice. *Id.* On November 5, 2019, the government completed the "herculean undertaking," Gov't's Mot. for an Extension of Time at 2, ECF No. 28, of providing an adequate record to resolve the pending motion, *see* Gov't's Reply and Accompanying Exs.

The government's supplemental filings show that the DEA seized, forfeited, and sold or liquidated 22 of the items on the plaintiff's Exhibits List. DEA Property Tracking Chart at 1–5 (showing items seized, forfeited, and sold are: item 1, seized from the defendant in Washington, D.C. and forfeited on February 26, 2013, Zekoski Decl. at 106; items 2, 3, 5–11, 13–18, and 25, seized from the defendant in Washington, D.C. and forfeited on March 22, 2013, *id.* at 37–39; and items 4, 19–21, and 24, seized from the defendant's girlfriend's apartment in Alexandria, Virginia and forfeited on February 21, 2013, *id*. at 75–76). The government's submission declared that it "does not have sufficient information or [has] no information whatsoever for twenty-seven items on Plaintiff's 'Exhibit[s] List.'" Gov't's Reply at 10. In particular, the government claims that it did not seize, or at least has no record of seizing, items 12, 22, 23, and 26–49. Further, except with respect to items 43 and 48, the government declares that none of those items were even listed in the order of forfeiture executed as part of the plaintiff's sentence. DEA Property Tracking Chart at 2–5.

## II.    LEGAL STANDARD

The government moves to dismiss the plaintiff's motion, which it construes at least in part as a civil complaint, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. Gov't's Mot. at 3. To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v.*

*Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In deciding a motion under 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see also, e.g.*, *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1265 (D.C. Cir. 2019).

## III. DISCUSSION

The plaintiff concedes that he pleaded guilty to a superseding indictment and forfeited "the monetary equivalent of 127 kilograms of cocaine," but claims he "by no means was pleading guilty to anything other than what was confiscated by the State Trooper during" what he calls a "traffic stop." Pl.'s Mem. at 6.[11] Consequently, the plaintiff seeks return of, or compensation for, the 49 items listed on his Exhibits List, asserting several grounds as support, namely, that (1) this property was illegally seized and never returned, Pl.'s Mot. at 1; (2) the government failed to give notice, to either him or his attorney, of its intent to forfeit the seized property, Pl.'s Mem. at 3–4; and (3) "the government never even attempted to differentiate between what was illegally gotten gains, and what was property lawfully obtained or 'untainted property,'" *id.* at 6, 9 (citing *Honeycutt v. United States*, 137 S. Ct. 1626, 1635 (2017) for the proposition that "forfeiture pursuant to 21 U.S.C. § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime"). Due to these alleged deficiencies, he

---

[11] The plaintiff concedes here and at his sentencing that he was responsible for, at a minimum, 127 kilograms of cocaine. *See* Pl.'s Mot. at 6; Sentencing H'rg Tr. at 125:20–21 (Court noting that "you, even with your own acknowledgment, start at 127 kilos"). At sentencing, however, the District Court found that a conspiracy involving at least 450 kilograms of cocaine was reasonably foreseeable to the plaintiff. *See* Sentencing H'rg Tr. at 25:20–25 (as to the "base offense [level] for all of the offenses based upon quantity that was reasonably foreseeable to [plaintiff]. . . . [the Court has] no difficulty whatsoever finding that it exceeded the 450 kilogram level that is the top of the range"), and the plaintiff's challenges to the district court's findings on drug quantity were rejected on direct appeal. *See Ford-Bey*, 657 F. App'x at 223. Nevertheless, the plaintiff refers to an "ongoing dispute" regarding whether other tractor trailers connected to his criminal case contained marijuana or cocaine. Pl.'s Mem. at 6–7. The "ongoing dispute" to which the plaintiff is presumably referring is his pending habeas motion filed in the U.S. District Court for the District of Maryland that challenges his conviction and sentence. *See* Motion to Vacate Under 28 U.S.C. § 2255, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. Apr. 29, 2019), ECF No. 478. That motion remains pending in the U.S. District Court for the District of Maryland and is not the subject of the instant action.

asserts that the government has violated the Due Process Clause of the Constitution, the Civil Asset Forfeiture Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000) (codified principally at 18 U.S.C. § 983), and Federal Rule of Criminal Procedure 32.2. Pl.'s Mem at 1–6.

The government mounts several defenses to the plaintiff's claims. First, since the plaintiff refers to searches of two separate apartments, one in Washington, D.C. and one in Alexandria, Virginia, the government suggests that yet another transfer to the Eastern District of Virginia may be necessary with respect to any items seized at the latter location. *See* Gov't's Mot. at 7. Second, the government argues that the plaintiff's motion, filed on February 19, 2019, is time barred because any claims regarding the seized property accrued on the date of the seizures, August 17, 2012, and are subject to the six-year statute of limitations set by 28 U.S.C. § 2401(a). *Id.* at 6–7. Finally, the government states that the plaintiff's "lack of notice argument can be easily dispensed with" as "at every single step during the criminal case against him, the Government apprised [plaintiff] of its intention to seek forfeiture of his property." *Id.* at 4.

In the discussion that follows, the administrative and statutory scheme governing post-conviction requests for the return of property, and the form such requests may take, is reviewed to inform how this plaintiff's *pro se* motion should be construed. Next, set against the fuller record provided by the government, and properly construing the plaintiff's motion as a civil complaint for equitable relief, the Court concludes that venue is properly laid in this District, that the plaintiff has asserted some claims that are timely and, further, with respect to those items the government says were never seized, the plaintiff has adequately alleged that they were seized by the government and neither returned nor forfeited. Having stated a claim for relief that is neither time barred nor legally insufficient, the plaintiff's action seeking return of property survives, in part, the government's motion to dismiss.

## A. Requests for Return of Property Seized During Criminal Proceedings

The plaintiff has sought relief pursuant to Federal Rule of Criminal Procedure 41(g), which allows a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to move for its return. FED. R. CRIM. P. 41(g); *In re Sealed Case*, 716 F.3d 603, 605 (D.C. Cir. 2013). "[C]ourts may rightfully refuse to return claimed property when it falls into one of three categories: (1) the property involved is contraband; (2) the property involved is forfeit pursuant to statute; or (3) the property involved is subject to government retention pending termination of the trial." *United States v. Farrell*, 606 F.2d 1341, 1347 (D.C. Cir. 1979); *see also United States v. Price*, 914 F.2d 1507, 1511 (D.C. Cir. 1990) (per curiam) ("[T]he District Court has both the jurisdiction and the duty to ensure the return of the defendant's property[,] but only when no government claim lies against that property.") (citation and internal quotation marks omitted).[12] When a motion under Rule 41(g) is made after criminal proceedings have terminated and the government has failed to either forfeit or return the property, the motion is construed as a civil complaint requesting equitable relief in the form of the property's return. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (collecting cases that stand for the proposition that a post-trial 41(g) motion must be "treat[ed] . . . as a civil complaint governed by the Federal Rules of Civil Procedure").

The law is well settled, however, "that once the Government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction to resolve the issue of return of property." *Price*, 914 F.2d at 1508; *see also Bazuaye v. United States*, 83 F.3d 482, 486 (D.C. Cir. 1996) ("[O]nce the government initiates administrative forfeiture proceedings, the court has no jurisdiction to

---

[12]     *Price* refers to Federal Rule of Criminal Procedure 41(e) which was re-designated by a 2002 amendment to Rule 41(g). *See Adeleke v. United States*, 355 F.3d 144, 146 n.1 (2d Cir. 2004).

consider a defendant's motion . . . under [Rule 41(g)].").  Instead, a defendant seeking the return

of forfeited property must "challenge forfeiture in the administrative proceeding."  *Price*, 914

F.2d at 1508; *accord Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 11–12 (D.D.C. 2007).

Upon completion of an administrative forfeiture, a party may seek to set it aside and

reopen forfeiture proceedings, for which a motion under 18 U.S.C. § 983(e) provides the

"exclusive" avenue.  18 U.S.C. § 983(e)(5).  Section 983(e) limits the bases for setting aside an

administrative forfeiture to defects in the notice provided to a person with an interest in the

property.  *Id*. § 983(e)(1) (explaining that a section 983(e) motion "shall be granted if . . . the

Government knew, or reasonably should have known, of the moving party's interest and failed to

take reasonable steps to provide such party with notice" and "the moving party did not know or

have reason to know of the seizure within sufficient time to file a timely claim"); *United States v.

Brome*, 942 F.3d 550, 552 (2d Cir. 2019) ("The right to seek to set aside [a] forfeiture is limited

to claims of lack of adequate notice.").  A motion under section 983(e) must be made within "5

years after the date of final publication of notice of seizure of the property."  *Id*. § 983(e)(3).  If

granted, the declaration of forfeiture is set aside "without prejudice to the right of the

Government to commence a subsequent forfeiture proceeding," meaning the most likely result is

a reopened proceeding in which the claimant can attempt to prevent the forfeiture of his property.

*Id*. § 983(e)(2)(A).

### B.   The Plaintiff's Motion is Construed as A Motion to Set Aside Forfeiture and A Civil Complaint

The plaintiff's motion raises a threshold question as to its proper construction, since a *pro

se* plaintiff's motion must be liberally construed to conform to the nature of the relief that he

seeks.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be

liberally construed  . . . and a *pro se* complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citation omitted)); *see also United States v. Albinson*, 356 F.3d 278, 284 n.9 (3d Cir. 2004) ("[A] *pro se* Rule 41(g) motion should be liberally construed to allow the assertion of alternative claims.").

The nature of this action and the relief sought are somewhat amorphous.  Although the plaintiff's aim is the return of his property, his filings can be read as proposing two routes to get there.  The first is the direct route—his motion requests "an Order directing the respondents to return his property . . . that was illegally seized from his place of residence on August 17, 2012." Pl.'s Mot. at 1.  His repeated reference to the alleged failure of the government to provide him or his lawyer with adequate notice of forfeiture, *see, e.g.*, Pl.'s Mem. at 2; Pl.'s Mot. in Opp'n to the Gov't's Mot. ("Pl.'s Opp'n") at 3, ECF No. 24, however, suggests the second route—an order setting aside the declarations of forfeiture under 18 U.S.C. § 983(e) that would allow him to pursue return of his property within a reopened administrative forfeiture proceeding.

Post-conviction Rule 41(g) motions by criminal defendants seeking to undo a civil forfeiture or otherwise secure the return of property have been construed in various ways.  Some courts construe these actions as motions to set aside a declaration of forfeiture under section 983(e).  *See, e.g., United States v. Brown*, 185 F. Supp. 3d 79, 84 (D.D.C. 2016) (construing a Rule 41(g) motion filed by a *pro se* defendant as a motion to set aside the government's forfeiture proceedings); *United States v. Flournoy*, 714 F. App'x 592, 595 (7th Cir. 2018) (construing a post-conviction Rule 41(g) motion as a section 983(e) motion when the plaintiff challenged the adequacy of notice).  Such motions have also been treated as civil complaints subject to the Federal Rules of Civil Procedure, *see Ritchie*, 342 F.3d at 907 (collecting cases), or, even while "treated as a civil complaint," subject, at least in part, to the Federal Rules of

*Criminal* Procedure, *Albinson*, 356 F.3d at 281, 284 n.9 (citation and internal quotation marks omitted) (analyzing the procedural requirements of Fed. R. Crim. P. 41(g) in determining the propriety of denying a post-trial 41(g) motion). Construction of this type of filing may depend on the disposition of the property at issue: when the property has already been forfeited, the motion for its return is often construed as an attempt to set aside the forfeiture, *see, e.g., Brown*, 185 F. Supp. 3d at 84, but when the government possesses the property, which has been neither forfeited nor returned, the action may be construed as a complaint in equity requesting the government to return the property, *see, e.g., Bertin v. United States*, 478 F.3d 489, 492 (2d Cir. 2007) ("Because we do not read Bertin's complaint to allege that the government took his property in satisfaction of a fine or penalty, and because it was not forfeited, we construe it as asserting claims pursuant to the FTCA and Rule 41(g).").

Confusion sets in when *pro se* filings, to which judges must lend a helping hand, *see Erickson*, 551 U.S. at 94, do not fall neatly into one box or the other. In this case, some of the property was plainly forfeited, while other items were not (because, the government says, the property was never seized). The government's ambivalence with respect to the nature of this action compounds the issue. For instance, when this motion was originally filed in the District of Maryland, the government treated the plaintiff's filing as a motion to which a memorandum in opposition, not an answer, was owed. *See* Gov't's Opp'n at 1. Upon appearing in this Court, the government changed tack, submitting its own chimeric filing, requesting that the "complaint" be dismissed while also treating the plaintiff's request for the return of his property as a standard Rule 41(g) motion. *See* Gov't's Mot. at 1.

The plaintiff's motion proposes alternative avenues for relief and so must be construed in the alternative. *Albinson*, 356 F.3d at 284 n.9. The motion is both a civil complaint requesting

equitable relief in the form of the immediate return of the plaintiff's property and a motion to set aside declarations of forfeiture thereby allowing him to participate in a renewed administrative forfeiture proceeding. As explained below, the government's arguments for dismissal are not equally successful when pitted against these alternative forms of action.

### C. The Plaintiff's Motion to Set Aside the Declaration of Forfeiture is Untimely

To the extent that the plaintiff's motion is construed as seeking relief under 18 U.S.C. § 983(e), it can only be directed at those items which were in fact forfeited by the government. The plaintiff's filings, however, do not differentiate between which items on his Exhibits List were forfeited and which he believes may still be in the government's possession. The government's submissions clarify that only 22 of the items listed by the plaintiff were administratively forfeited by the DEA: items 1–11, 13–21, and 24–25. *See* Zekoski Decl. at 75–76 (Decl. of Forfeiture dated February 21, 2013, forfeiting the items seized from the plaintiff's girlfriend's apartment); *id.* at 106 (Decl. of Forfeiture dated February 26, 2013, forfeiting the plaintiff's car); *id.* at 37–39 (Decl. of Forfeiture dated March 22, 2013, forfeiting the items seized from the plaintiff's D.C. apartment).

Construed as a motion under 18 U.S.C. § 983(e) to set aside the declarations of forfeiture concerning those 22 items for inadequate notice, the plaintiff's request must be rejected. A section 983(e) motion is the "exclusive remedy for seeking to set aside a declaration of forfeiture." 18 U.S.C. § 983(e)(5). The motion must, however, "be filed not later than 5 years after the date of final publication of notice of seizure of the property." *Id.* § 983(e)(3). With respect to the declarations of forfeiture that the plaintiff seeks to set aside, that time has already passed. The latest publication of a notice of seizure by the DEA in the Wall St. Journal was on November 12, 2012. Zekoski Decl. at 4, 28–30. The last date on which the DEA mailed notices

of seizure to addresses associated with the plaintiff was December 11, 2012. *Id*. at 31, 34, 59, 62, 104. Indeed, the latest declaration of forfeiture was entered on March 22, 2013. *Id*. at 37–39. The plaintiff filed his motion on February 19, 2019, at least a year out of time. Pl.'s Mot. at 1.

The plaintiff suggests that the five-year limitations period "must be tolled," citing *Richards v. Mileski*, 662 F.2d 65 (D.C. Cir. 1981), Pl.'s Opp'n at 5–6, a case discussing the general proposition that a statute of limitations may be tolled "when a defendant fraudulently conceals the facts giving rise to the plaintiff's claim." *Richards*, 662. F.2d at 69. Other courts have considered whether the limitations period in section 983(e) is subject to equitable tolling. *See, e.g., Cobar v. DEA Asset Forfeiture Section*, No. 12 Civ. 7415, 2014 WL 1303110, at *8–9 (S.D.N.Y. Mar. 31, 2014) (holding that section 983's five-year clock should be tolled only upon a showing that the plaintiff "acted with reasonable diligence" and that an "extraordinary circumstance . . . prevented Plaintiff from timely filing his complaint"). Even were the limitations period in section 983(e) subject to equitable tolling, nothing in the record of this case suggests that tolling should be applied here. In *Richards*, the primary case on which the plaintiff relies but which does not address section 983(e), the D.C. Circuit explained that, when a defendant fraudulently conceals facts giving rise to the plaintiff's claims, the limitations period is "tolled until the plaintiff, employing due diligence, could have discovered the facts that were fraudulently concealed." *Richards*, 662 F.2d at 69. The plaintiff's assertions that there has been "wide-spread fraud committed by the government" and that the government has "intentionally passively and actively conceal[ed] the record," Pl.'s Opp'n at 5–6, are belied, however, by the unimpeached documents the government has submitted in opposition to the plaintiff's motion to set aside the DEA forfeitures. Notices of seizure and intent to forfeit were sent and delivered to

his address in Washington, D.C. on September 28, October 9, and October 16, 2012.  Zekoski

Decl. at 24–27, 48–51, 77–78.  The government also informed the defendant that his property

had been administratively forfeited in its sentencing memoranda in his criminal proceedings.

Gov't's Sentencing Mem. at 30.

These notices to the plaintiff, made during the pendency of the forfeiture actions and

again after those proceedings had concluded but while a section 983(e) motion would still have

been timely, are a far cry from the "affirmative acts" the defendants in *Richards* took to

"prevent[] [the plaintiff] from realizing that he had a cause of action against them."  *Richards*,

662 F.2d at 70.  Even under the plaintiff's proposed standard that the defendants "affirmatively

suppressed the truth," section 983(e)'s five-year limitations period cannot be tolled.  *Id.*  Thus, to

the extent the plaintiff seeks to set aside the forfeiture declarations for the 22 items on his

Exhibits List that were the subject of those declarations, that request is untimely and therefore

denied.[13]

### D.    The Plaintiff's Civil Complaint for Return of Items Not Subject to Administrative Forfeiture is Timely and Venue is Proper in the District of Columbia

In addition to the 22 items that the government has established were subject to

administrative forfeiture, are the remaining 27 items on the plaintiff's Exhibits List for which his

motion may be construed as a civil complaint requesting the equitable relief of return of that

---

[13]     The criminal forfeiture order attached to the defendant's judgment and conviction order does not expand the list of items for which the plaintiff's motion is time barred.  For one, a motion under section 983(e) applies to civil forfeiture, not criminal.  18 U.S.C. § 983(e)(1) (providing an avenue to set aside "any nonjudicial *civil* forfeiture" (emphasis added)).  In any event, the government's submissions suggest that it took a belt and suspenders approach to the forfeiture of the plaintiff's possessions.  The order of forfeiture purports to forfeit nearly every item that had already been forfeited by the DEA two years earlier, missing only the plaintiff's Maserati.  *See* DEA Property Tracking Chart at 1–5; *see also* Amend. Judgment & Conviction, Att.1, Order of Forfeiture at 1–4, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. Jan. 31, 2017), ECF No. 401-1.  Although the order of forfeiture is indeed broader, including a money judgment of $108,000,000 and several bank accounts and other pieces of property, by the government's own admission, it does not describe 27 of the items on the plaintiff's exhibits list.  DEA Property Tracking Chart at 1–5.

property.[14]  So construed, the plaintiff's claim is timely.  No statute of limitations specifically

addresses equitable proceedings seeking the return of property seized as part of a criminal case.

The fallback six-year statute of limitations for actions brought against the United States thus

applies.  28 U.S.C. § 2401(a) ("[E]*very* civil action commenced against the United States shall be

barred unless the complaint is filed within six years after the right of action first accrues."

(emphasis added)).  That six-year clock begins to run "when the party seeking return of his

property 'discovered or had reason to discover that his property' was improperly seized."  *Bertin*,

478 F.3d at 493.  As noted, property seized in the course of an investigation must be returned at

the close of criminal proceedings or civil forfeiture proceedings unless it is (1) contraband,

(2) needed as evidence, or (3) properly forfeited by the government.  *Farrell*, 606 F.2d at 1347.

The claim for return of seized but unforfeited property therefore accrues at the close of criminal

proceedings because prior to that "the defendant . . . has no reasonable expectation that it will be

returned."  *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1213 (10th Cir. 2001); *see also*

*Bertin*, 478 F.3d at 493; *United States v. Sims*, 376 F.3d 705, 708–09 (7th Cir. 2004).[15]  The

---

[14]     If the plaintiff's filing were construed more broadly as a complaint in equity requesting the return of the 22
forfeited items, the Court would lack jurisdiction over those claims.  As the D.C. Circuit has made clear, "once the
Government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing
criminal proceeding, the District Court has no jurisdiction to resolve the issue of return of property."  *Price*, 914
F.2d at 1511.  The plaintiff's only remedy is "to challenge [the] forfeiture in the administrative proceeding."  *Id.*
The plaintiff's statutory ability to participate in those administrative forfeiture proceedings, 18 U.S.C.
§ 983(a)(2)(A) ("Any person claiming property seized in a nonjudicial civil forfeiture proceeding . . . may file a
claim with the appropriate official after the seizure."), and his statutorily prescribed avenue to complain of a lack of
notice that may have prevented such participation, *id.* § 983(e)(5), means he had an "adequate remedy at law" with
respect to any items that were subject to administrative forfeiture.  *Younger v. Harris*, 401 U.S. 37, 43 (1971).
"[T]he basic doctrine of equity jurisprudence" instructs "that courts of equity should not act . . . when the moving
party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Id.* at 43–44.
[15]     The government assumes that a six-year statute of limitations governs this matter in its entirety, *see* Gov't's
Mot. at 6–7, but also assumes that the plaintiff's claim accrued on August 17, 2012, the date of the seizure, *id.*  Both
assumptions are incorrect.  Section 983(e)(3) provides that the statute of limitations to challenge forfeiture
proceedings is "5 years after the date of final publication of notice of seizure of the property."  18 U.S.C.
§ 983(e)(3).  Moreover, section 2401(a), which sets the statute of limitations for the plaintiff's motion when
construed as a civil complaint, starts the clock when "the right of action first accrues."  28 U.S.C. § 2401(a); *see also*
*Sims*, 376 F.3d at 708–09 (explaining that a claim for return of unforfeited property accrues when "the claimant
knows that he has a present right to its return," *i.e.*, "once the criminal proceedings or the civil forfeiture proceedings

plaintiff's criminal proceedings closed at the earliest on June 5, 2015, when he was initially sentenced. His motion, filed in February of 2019, thus was filed well within time for the 27 items not subject to declarations of forfeiture.

As to venue, the government agrees that venue is proper in this District for any items seized in Washington, D.C., but argues that to the extent the plaintiff seeks the return of items seized in Alexandria, Virginia, any motion for the return of those items must be filed in or transferred to the Eastern District of Virginia. Gov't's Mot. at 7. In support, the government relies on *United States v. Garcia* for the proposition that post-trial Rule 41(g) motions must be filed in the district where the property was seized and that this "applies to all actions to recover property seized in connection with a criminal investigation, notwithstanding their 'civil' nature." 65 F.3d 17, 21 (4th Cir. 1995).

Rule 41(g), which was amended, in 2002, now expressly requires motions under that rule be made in the district where the property at issue was seized. FED. R. CRIM. P. 41(g). Some courts have applied that venue provision to post-conviction motions styled as Rule 41(g) motions. *See Garcia*, 65 F.3d at 20 (although "a postconviction motion for return of property is a civil action, we disagree [with other circuits] that it is therefore not governed by Rule 41(e)'s venue provision"); *cf. United States v. Parlavecchio*, 57 F. App'x 917, 921 (3d Cir. 2003) (per curiam) (concluding that "the amended Rule 41(g) will eliminate much of the confusion surrounding venue for post-conviction motions for return of property"). Caselaw invoking the other procedural requirements of Rule 41(g) in ruling on post-conviction motions for return of property lend further support for the notion that such motions must abide by the Rule's district-of-seizure venue provision. *See, e.g., United States v. Melquiades*, 394 Fed. Appx. 578, 580

---

have concluded without the property having been forfeited (or the statute of limitations for bringing either type of proceeding ha[s] expired)").

(11th Cir. 2010) (looking to "the plain language of Rule 41(g)" to order the collection of evidence before disposing of a post-trial 41(g) motion).

Although the D.C. Circuit has not offered guidance on the proper venue for motions for return of property filed after the conclusion of criminal or forfeiture proceedings, its precedents suggest application of Rule 41(g)'s venue provision after criminal proceedings have ceased would be improper. This Circuit has made clear that Rule 41(g)'s applicability extends only to "property . . . seized 'for use in a criminal prosecution'" and has suggested that its strictures are in place only "in the context of an ongoing criminal proceeding." *Price*, 914 F.2d at 1511 (quoting *In re Seizure Warrant* 830 F.2d at 374). The *Price* court found support for the conclusion that an individual cannot "avail himself" of Rule 41(g) once "the criminal proceeding involving the property had ended[] and the property was subject to civil forfeiture proceedings," in the text of the rule then in force. That now-altered text, by including the instruction that a motion made "after an indictment or information is filed . . . shall be treated also as a motion to suppress under Rule 12," indicated that the rule applied to only active criminal proceedings. *Price*, 914 F.2d at 1511. Just as support for reading the applicability of Rule 41(g)'s predecessor to end with the close of criminal proceedings could be found in that rule's text, so too does the amended rule continue to support such an interpretation. The current rule authorizes the district court, on return of seized property, to "impose reasonable conditions to protect access to the property and its use in later proceedings." FED R. CRIM. P. 41(g). This confirms that the rule is aimed at providing an avenue for individuals aggrieved by the government's retention of property before and during criminal proceedings.[16]

---

[16]    *United States v. Wilson* is not to the contrary. 540 F.2d 1100 (D.C. Cir. 1976). That case "present[ed] the question of the jurisdiction and duty of a federal district court in a criminal case to return to the defendant that property seized from him in the investigation" remaining in the government's possession. *Id.* at 1101. In determining that "the district court has both the jurisdiction and duty to return" property to which the government

Rule 41(g) motions filed after the close of a criminal case are construed as civil complaints because once criminal proceedings end, the rule has no force. *See, e.g., Clymore v. United States*, 217 F.3d 370, 373 & n.6 (5th Cir. 2000) (explaining that a post-conviction 41(g) motion is treated "as a civil action under 28 U.S.C. § 1331" jurisdiction for which "exists not by virtue of any statute but rather derives from the inherent authority of the court over those who are its officers"). The plaintiff's motion, properly construed as a civil complaint, is therefore not controlled by the Rule 41's venue provision.[17]

The venue for civil actions seeking equitable relief in the form of the return of seized property is determined by resort to the standard venue statute, 28 U.S.C. § 1391. Where, as here, the defendant is "the United States," venue is controlled by section 1391(e)(1). Under section 1391(e)(1), "[a] civil action in which a defendant is . . . the United States[] may, except as otherwise provided by law, be brought in any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." The D.C. Circuit has held that where venue arguably exists in more than one district, "the controlling factors are the accessibility of relevant evidence and the convenience of the defendant (but *not* of the plaintiff)." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312, 314 (D.C. Cir. 1985) (emphasis in original) (interpreting

---

can assert no claim, the court noted that "seized [property] may be ultimately disposed of by the court in that proceeding or in a *subsequent civil action.*" *Id.* at 1104 (emphasis added). The case thus did not deal with the scope of Rule 41(g)'s application, and moreover specifically condoned the use of a civil action to achieve the return of property.

[17] Another Judge in this District has suggested otherwise. In *United States v. Bailey*, a case primarily concerned with a prisoner's motion to vacate, set aside, or correct his sentence, the plaintiff had filed "numerous motions pursuant" to Rule 41(g). 209 F. Supp. 3d 55, 59 & n.1 (D.D.C. 2016). The court determined that this District was not the proper venue, explaining that post-conviction motions to return property "must be filed in the district where the property was seized," *id.* at 59 n.1 (quoting Fed. R. Crim. P. 41(g)), or, alternatively, because the property at issue had already been forfeited, the court "ha[d] no jurisdiction to resolve" those motions, *id.* (quoting *Price*, 914 F.2d at 1511); *see also supra* Note 14. In any event, the *Bailey* court had no cause to consider the proper venue for a post-conviction Rule 41(g) motion requesting the return of property still allegedly in the government's possession.

section 1391(b)(1)). Further, the Second Circuit, interpreting section 1391(b)(2), which is nearly identical to section 1391(e)(1), has explained that "[w]hen material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and thus, substantial." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005) (noting that "'[s]ubstantiality' for venue purposes is more a qualitative than a quantitative inquiry."). Moreover, venue is not restricted to "the district in which the 'most substantial' events or omissions giving rise to a claim occurred. . . . [r]ather . . . § 1391(b)(2) contemplates that venue can be appropriate in more than one district." *Id.* at 432 (internal quotation marks and citation omitted).

The evidence regarding administrative forfeiture proceedings is as accessible here as in the Eastern District of Virginia, and the government has already succeeded in having this case transferred from the District of Maryland, where evidence regarding the criminal forfeitures may have been more accessible. Besides, the government has presented no argument that litigating this matter here would be *inconvenient* but merely asserted that the motion should have been filed both here and in Virginia as a matter of law. *See* Gov't's Mot. at 6–7. Yet, the record shows that much of the property at issue was seized from the plaintiff's Washington, D.C. apartment, *see* Gov't's Suppl. Exs. at 1–31, and, despite seeking some items seized in Virginia, the plaintiff focuses most of his attention on items seized from his former residence in Washington, D.C. *See* Pl.'s Mot. at 1 (seeking items "illegally seized from his place of residence on August 17, 2012"); Pl.'s Resp. to the United States of America's Not. Of Supp. Exs. ("Pl.'s Sec. Mem. in Opp'n") at 5, ECF No. 24-1 (seeking an itemized list of the property seized from his Washington, D.C. apartment); *id.* at 4 ("The plaintiff has only sought redress for one illegal

search and seizure, and one search and seizure only.  And that is the illegal search and seizure of his [Washington, D.C.] apartment.").

Even if venue for some claimed items may be proper in the Eastern District of Virginia, a "substantial part of the events or omissions giving rise to the claim occurred," in the District of Columbia.  28 U.S.C. § 1391(e)(1); *cf. Boyd v. United States*, 209 F. Supp. 3d 160, 163–64 (D.D.C. 2016) (applying § 1391(e)(1) to a complaint seeking return of property, which was criminally forfeited following prosecution in another district, and concluding that because "[n]one of the real property identified in the Indictment or subsequent sentencing court orders is located in the District of Columbia, and the complaint does not allege that any of the acts or omissions giving rise to the plaintiff's claims occurred in this district. . . . the motion to dismiss for lack of venue is well taken").  Thus, venue is proper here to hear the plaintiff's equitable claim for return of 27 items that were not the subject of administrative forfeiture.

**E.**  **The Plaintiff's Complaint Survives a Motion to Dismiss with Respect to the 27 Items He Alleges Were Seized and the Government Concedes Were Never Forfeited**

Remaining in this case, then, is a complaint alleging that items 12, 22–23, and 26–49 on the Exhibits List were seized from either the plaintiff's or his girlfriend's residences and were never returned.  The government contends that, because the plaintiff "fails to provide any evidence whatsoever that the forty-nine items on the 'Exhibit[s] List' actually belonged to him" or "that he legitimately obtained those items and that they were *not* proceeds of his narcotics and money laundering activities," his motion, when construed as a civil complaint, must fail as a matter of law.  Gov't's Reply at 2.

As the government is no doubt aware, however, "[a] rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of

what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). Further, the government does not dispute that it must return seized property unless that property is contraband, forfeited, or "is subject to government retention pending termination of the trial." *Farrell*, 606 F.2d at 1347. The government has failed to produce any evidence that may be considered at the motion to dismiss stage that 27 of the 49 items on the Exhibits List were forfeited. Moreover, according to the plaintiff's complaint and the judicially noticeable documents in the record, which must be accepted as true: these 27 items requested to be returned, are not contraband, Pl.'s Mem. at 2, were seized, but not forfeited, and may still be in the government's possession, *id.*, and the plaintiff's criminal proceedings have long since ended.

The government's assertion may be correct that the plaintiff will be unable to prevail on the merits because he cannot "establish lawful entitlement to the property" he requests. Gov't's Reply at 1 (quoting *Jackson v. United States*, 526 F.3d 394, 396 (8th Cir. 2008)). For now, however, the plaintiff has sufficiently alleged that he "was a successful and prominent figure in the music business and earned a very, very good salary as a result" that allowed him to purchase the property in question. Pl.'s Mem. at 9. Of course, if the government does not possess the property claimed the Court would lack power to order its return or fashion other relief. *See, e.g., Bailey v. United States*, 508 F.3d 736, 740 (5th Cir. 2007) ("[T]he government cannot return property it does not possess, and the doctrine of sovereign immunity bars the award of monetary damages under Rule 41(g)."). Yet, the complaint alleges that this "lawfully obtained" property may still be in the government's possession. Pl.'s Mem. at 3 (requesting a monetary substitute

for his property "if the government does not have the defendant's property in their possession"). At this early stage, those allegations must be accepted as true. *Twombly*, 550 U.S. at 555.

In short, the government has failed to show why the complaint requesting return of 27 claimed items is legally insufficient. The motion to dismiss for failure to state a claim is thus denied with respect to items 12, 22–23, and 26–49.

*** 

In this case, the plaintiff seeks from the government a full accounting of what the government took from his and his girlfriend's apartments and whether the government still has the items purportedly taken. Certain crimes may expose criminal defendants to forfeiture of their property but insisting that the government account for that property is neither audacious nor temerarious. *See* Gov't's Mot. at 1 ("Plaintiff has the audacity to seek the return of his ill-gotten proceeds."); Gov't's Reply at 3 ("Nonetheless, Plaintiff has the temerity to claim these forty-nine items should be returned to him."). Nor, for that matter, does the boldness of a request provide a legal basis for dismissal.

The government has yet to produce an inventory for the August 17, 2012 seizures that should likely have been created upon execution of the state court warrants used to seize the plaintiff's property and can establish precisely what was—or was not—seized. *See* D.C. SUPERIOR COURT CRIM. R. 41(f)(5) ("An officer executing a search warrant must write and subscribe an inventory setting forth the property or person seized under it."); VA. CODE ANN. § 19.2-57 (West 2008) ("The officer who seizes any property [pursuant to a search warrant] shall prepare an inventory thereof, under oath."). Nor has the government submitted any sworn affidavit that the government no longer or never did possess the 27 items that were not forfeited. The plaintiff may, as the government suggests, lack evidence that the items in his Exhibits List

were "lawfully obtained," Pl.'s Mem. at 3, or even "belonged to him" at all. Gov't's Reply at 2.

Taken together, the production of these sworn inventories and affidavits disclaiming possession

of the property, along with the failure on the plaintiff's part to produce evidence that the property

was ever his in the first place may show that "no genuine dispute as to any material fact" is

present and that the government "is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a).[18] On the government's Rule 12(b)(6) motion, however, the only issue is the sufficiency

of the complaint, and in that regard, the plaintiff's claim for equitable relief in the form of return

of the 27 items, which were not administratively forfeited in 2013, survives.

## IV.    CONCLUSION

For the foregoing reasons, the government's motion to dismiss is GRANTED in part and

DENIED in part. The plaintiff's motion is DISMISSED as untimely with respect to items 1–11,

13–21, and 24–25 on his Exhibits List. The plaintiff's motion survives, however, as a civil

complaint requesting equitable relief in form of the return of his property with respect to items

12, 22–23, and 26–49 on his Exhibits List.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: January 2, 2020

_____
BERYL A. HOWELL
Chief Judge

---

[18] The plaintiff asserts that he is entitled to an evidentiary hearing to resolve his complaint, Pl.'s Mem. at 7–8, but the case law he relies on, *United States v. Albinson*, does not support his assertion. In *Albinson* the parties did not dispute "that the property seized during the . . . search is neither contraband nor subject to forfeiture" and the government solely relied on "unsubstantiated assertions that it no longer possesses the property at issue." 356 F.3d at 280 n.4, 282 (internal quotation marks omitted). *Albinson*, however, recognized that "a district court need not necessarily conduct an evidentiary hearing on every Rule 41(g) motion," provided that sufficient documentary evidence is submitted. *Id.* at 281. More importantly, *Albinson* applied the procedural requirements of Rule 41(g) to a post-conviction motion for return of property styled as a 41(g) motion. By contrast, this Court has determined that such motions, construed as civil complaints, are governed by the Federal Rules of Civil Procedure. *See supra* Part III.D. An evidentiary hearing is not yet warranted under those rules as summary judgment may still guide proper resolution of this case.