UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ISMAEL FORD-BEY,

          Plaintiff,

          v.

UNITED STATES OF AMERICA,

          Defendant.

Civil Action No. 19-2039 (BAH)

Chief Judge Beryl A. Howell

**MEMORANDUM OPINION**

Plaintiff Ismael Ford-Bey, proceeding *pro se*, filed a motion in February 2019, pursuant to Federal Rule of Criminal Procedure 41(g), seeking the return of personal property allegedly seized from his residence in Washington, D.C. and his girlfriend's residence in Alexandria, Virginia, almost seven years earlier in August 2012, by Drug Enforcement Administration ("DEA") agents. Pl.'s Mot. for Return of Property ("Pl.'s Mot.") at 1, ECF No. 1.[1] In response, the government filed a "Motion to Dismiss and Supplemental Response," arguing, *inter alia*, that the plaintiff's property had been forfeited, with notice to the plaintiff, as part of his criminal proceedings in Maryland and through administrative forfeiture by DEA. Gov't's Mot. to Dismiss & Suppl. Resp. ("Gov't's MTD") at 3, ECF No. 18. The motion to dismiss was granted only with respect to 22 items that were administratively forfeited but denied with respect to 27 additional items that plaintiff alleged were seized but were never forfeited. *Ford-Bey v. United States*, Civil Action No. 19-2039 (BAH), 2020 WL 32991, at *10, 13–15 (D.D.C. Jan. 2, 2020).

The government has now filed a "Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment ("Gov't's Mot."), ECF No. 40, seeking to resolve plaintiff's remaining

---

[1]     The plaintiff's own spelling of his name is adopted here, although filings associated with his underlying criminal conviction refer to him as "Ishmael," rather than "Ismael," Ford-Bey.

claim for equitable relief in the form of the return of the 27 missing items that he alleges were seized from his apartment. The government has now presented sufficient evidence to support its assertion that the property in question is not in its possession (nor was ever seized), and plaintiff has provided no evidence to the contrary. The government's motion for summary judgment is therefore granted.

## I.   BACKGROUND

This action centers around the several searches related to plaintiff and the seizure of a number of plaintiff's possessions during the investigation of a large drug distribution conspiracy. The events surrounding plaintiff's arrest, the seizure of his property, and forfeiture proceedings are described in detail in this Court's earlier opinion, *Ford-Bey*, 2020 WL 32991, at *1–6, and will only be briefly described here, along with the procedural history, focusing on the circumstances relevant to the remaining 27 items still at issue.

### A.   Factual Background

During an August 15, 2012 traffic stop in Texas, the Texas Department of Public Safety conducted a search of a refrigerated box truck. Gov't's Notice of Suppl. Exs. in Supp. of Mot. to Dismiss, Ex. 1 ("Gov't's Suppl. Exs.") at 8, ECF No. 21-1. That search revealed that the truck was hauling multiple kilograms of cocaine to Prince George's County, Maryland. *Id*. The truck was allowed to continue on its way. *Id*. Upon arrival in Maryland, on August 17, 2012, the truck was met by the plaintiff, who was observed by law enforcement unloading the cocaine into his car. *Id*. As law enforcement moved to intercept, the plaintiff drove on, setting off a high-speed chase. *Id*. After crashing his car into a median strip, the plaintiff successfully fled on foot. *Id*. Law enforcement at the scene recovered "13 boxes of suspected cocaine" from his car. *Id*.

#### 1.   Seizures

That same day, DEA agents obtained state search warrants for both the plaintiff's residence in Washington, D.C., and his girlfriend's apartment in Alexandria, Virginia. *Id*. at 8, 19. Upon executing those warrants, the agents seized a number of valuable items, including at least one luxury vehicle, watches, assorted pieces of jewelry and handbags. *See* Pl.'s Mem. of Points and Auths. in Support of Mot. to Return Property ("Pl.'s Mem.") at 2, 5, ECF No. 1-1; Gov't's Mot., Ex. A ("Seizure List") at 2–3, ECF No. 40-2; Gov't's Mot., Ex. B ("DEA Reports of Investigation" ("ROI")) at 12–15, 19–25, ECF No. 40-3.

### 2. Administrative Forfeiture and Criminal Proceedings

Although the plaintiff was not yet in custody, DEA initiated procedures to forfeit the seized items. *See, e.g.,* Gov't's Suppl. Exs. at 2–31. Under those procedures, DEA assigned separate case numbers to the various items, based apparently in part on the location where the items were seized. *See* Gov't's Reply in Support of Mot. to Dismiss and Resp. to the Court's September 17, 2019 Order ("Gov't's Reply Supp. MTD"), Att. 1, Declaration of Acting Forfeiture Counsel of DEA David A. Zekoski and Exs. 1–48 at 2, ECF No. 29-1. The items seized, on August 17 and 18, 2012, from two different locations included: (1) assorted watches and jewelry valued at $173,900, seized from Ford-Bey's apartment in Washington, D.C., *id.* at 16–17, 37–39, and (2) assorted watches and jewelry valued at $22,400, seized from Ford-Bey's girlfriend's apartment in Alexandria, Virginia, *id.* at 48–49.

DEA declared the property forfeited in three separate declarations of forfeiture. *Id*. at 75–76 (Decl. of Forfeiture, dated February 21, 2013, forfeiting the items seized from the plaintiff's girlfriend's apartment); *id*. at 106 (Decl. of Forfeiture, dated February 26, 2013, forfeiting the plaintiff's car); *id*. at 37–39 (Decl. of Forfeiture, dated March 22, 2013, forfeiting the items seized from the plaintiff's D.C. apartment). According to the government, the forfeited

property has been sold or liquidated.  *See* Gov't's Reply Supp. MTD, Ex. III ("DEA Property Tracking Chart") at 1–5, ECF No. 29-4.

Following his arrest on August 16, 2013, plaintiff was charged, on February 24, 2014, in a superseding indictment in the U.S. District Court for the District of Maryland, with conspiracy to distribute narcotics and conspiracy to commit money laundering.  *See* Superseding Indictment, *United States v. Ford-Bey*, No. 13-cr-492-DKC (D. Md. Feb. 24, 2014), ECF No. 24.  The superseding indictment included a criminal forfeiture allegation giving notice, pursuant to Federal Rule of Criminal Procedure 32.2, that if he and his three co-defendants were convicted, the government would seek forfeiture of property derived from, involved in, or traceable to the charged narcotics and money laundering offenses.  *See* Superseding Indictment at 18–23.  This property included, among other things, $185,000 in assorted jewelry, *id.* at 19, 21, and $24,565 in assorted clothing items, *id.* at 20–21.

On December 1, 2014, the same day the plaintiff pleaded guilty, the judge presiding over his criminal case issued a Preliminary Order of Forfeiture against the plaintiff.  *See* Gov't's MTD, Ex. C ("Order of Forfeiture") at 37–40, ECF No. 18-1.  Upon entry of the order, the government was "authorized to seize the forfeited property" and to "commence any applicable proceeding to comply with statutes governing third party rights, including giving notice of this Order."  *Id.* at 39–40.  Further, the government was directed to "publish notice of this Order in accordance with 21 U.S.C. § 853(n)(1)."  *Id.*  The Order would become final at the time of sentencing.  *Id.*[2]

---

[2] Plaintiff was sentenced to 396 months of incarceration, followed by 10 years of supervised release.  *See* Judgment & Conviction at 3–4, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. June 5, 2015), ECF No. 179.  The preliminary forfeiture order became final that day and was attached to the defendant's Judgment and Conviction Order.  *See id.*, Att. 1, Order of Forfeiture at 1–4, ECF No. 179-1; Transcript of Sentencing Hearing at 130:24–131:8, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. June 4, 2015), ECF No. 222.  The government's sentencing memorandum referenced the administrative forfeiture proceedings, which had concluded prior to the plaintiff's arrest, and informed him that DEA had administratively forfeited certain property that was seized from him.  Gov't's

### B. Procedural Background

On February 19, 2019, plaintiff filed a "Motion for Return of Property Pursuant to F.R.C.P. Rule 41(g)." Pl.'s Mot. at 1. An "Exhibits List" attached to the motion listed 49 items he says were seized during the searches of his apartment and that of his girlfriend. Pl.'s Mot., Att. 2, Exhibits List in Support of Rule 41(g) Mot. ("Pl.'s List"), ECF No. 1-2. Plaintiff sought the return of these 49 items, which he alleged were seized as part of an unlawful search and seizure and were then forfeited without notice, or simply seized without being forfeited. Pl.'s Mem. at 4–5.

The government filed a "Motion to Dismiss and Supplemental Response to its Opposition to Plaintiff's Fed. R. Crim. P. 41(g) Motion," Gov't's Mot. at 1, and then, when ordered to produce a fuller record, made supplemental filings showing that DEA had seized, forfeited, and sold or liquidated only 22 of the items on plaintiff's Exhibits List. DEA Property Tracking Chart at 1–5. The government declared that it did "not have sufficient information or no information whatsoever for twenty-seven items on Plaintiff's 'Exhibit[s] List.'" Gov't's Reply Supp. MTD at 10.

The Court construed plaintiff's motion as one to set aside the forfeiture of the 22 items that had been subject to administrative forfeiture and as a civil complaint requesting the return of the additional 27 items. *Ford-Bey*, 2020 WL 32991, at *7–8. The government's motion was granted with respect to the 22 forfeited items on plaintiff's list because plaintiff's motion to set aside the forfeiture fell outside the applicable five-year statute of limitations. *Id.* at *9–10. The

---

Reply Supp. MTD, Ex. V ("Gov't's Sentencing Mem.") at 30, ECF No. 29-6 (explaining that certain "high value assets . . . were seized and forfeited by the DEA" after "[n]o claims were filed regarding the seized property and all forfeitures were completed"). In 2016, the plaintiff's sentence was vacated by the Fourth Circuit, which held that a firearm enhancement had been improperly applied, *United States v. Ford-Bey*, 657 F. App'x 219, 220–22 (4th Cir. 2016) (per curiam), but on remand, the same final forfeiture order was attached to this amended judgment, *see* Amend. Judgment & Conviction, *Ford-Bey*, No. 13-cr-492-DKC (D. Md. Jan. 31, 2017), Att. 1, Order of Forfeiture at 1–4, ECF No. 401-1.

government's motion was denied, however, with respect to the 27 missing items not subject to forfeiture. The government contended that, because the plaintiff "fail[ed] to provide any evidence whatsoever that the forty-nine items on the 'Exhibit[s] List' actually belonged to him" or "that he legitimately obtained those items and that they were *not* proceeds of his narcotics and money laundering activities," his motion, when construed as a civil complaint, must fail as a matter of law. Gov't's Reply Supp. MTD at 2. The complaint alleged, however, that the property in question was "lawfully obtained," was seized by the government, and might still be in the government's possession. Pl.'s Mem. at 3. Given the procedural posture, the government failed to show why the complaint requesting return of 27 claimed items was legally deficient to state a claim, so the motion to dismiss was denied with respect to those items. *Ford-Bey*, 2020 WL 32991, at *13.

Simply put, the government had failed to provide evidence to support its assertion that the items described by plaintiff had not been seized as he alleged. For example, the government did not provide the relevant search warrant returns. *See* D.C. SUPERIOR COURT CRIM. R. 41(f)(5) ("An officer executing a search warrant must write and subscribe an inventory setting forth the property or person seized under it."); VA. CODE ANN. § 19.2-57 (West 2008) ("The officer who seizes any property [pursuant to a search warrant] shall prepare an inventory thereof, under oath."). Nor did it submit reports of investigation indicating the items seized in the searches or any sworn affidavit that the government no longer or never did possess the 27 items that were not forfeited.

These remaining 27 items that plaintiff alleges to be in the government's possession are:

[#12.] Bulgari (yellow gold with black strap);
[#22.] Yellow Gold Necklace with Louis Vuitton Diamond Charm;
[#23.] Rose Gold Necklace with Dog Tags;
[#26.] Stainless Steel & Black Hermes Cufflinks;

[#27.] Cherrywood Ralph Lauren Cherrywood Bar;
[#28.] Versace Plates, Champagne Glasses & Silverware;
[#29.] White Llama Rug;
[#30.] Louis the 13th (1 bottle);
[#31.] Vintage Magnum Bottle of Cristal;
[#32.] Gucci Full Length Fur Coat;
[#33.] Gucci Tuxedo;
[#34.] Ralph Lauren Chocolate Tuxedo;
[#35.] Ralph Lauren three-piece cashmere suit;
[#36.] Ralph Lauren three-piece gray suit;
[#37.] Ralph Lauren two-piece blue suit;
[#38.] Ralph Lauren pink blazer with gold buttons;
[#39.] Ralph Lauren crocodile loafers (4 pairs);
[#40.] Louis Vuitton silk baseball jacket (brown);
[#41.] Louis Vuitton silk baseball jacket (blue & red);
[#42.] Louis Vuitton crocodile loafers (2 pairs);
[#43.] Black leather winter bomber jacket;
[#44.] Blue leather Gucci jacket;
[#45.] Red/Orange leather Gucci jacket;
[#46.] White leather Gucci jacket;
[#47.] Purple Label blue leather Ralph Lauren Leather;
[#48.] Several other suits, ties, shoes, beds, tables, boots, sweaters, TVs, jeans, jackets, coasts [sic], dress shirts, etc. (totaling $175k);
[#49.] Gucci Bike.

Pl.'s List at 1.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the "absence of a genuine issue of material fact" in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, appropriate inquiry is "whether, on the evidence so viewed, 'a reasonable jury could return a

7

verdict for the nonmoving party'" (quoting *Liberty Lobby*, 477 U.S. at 248)).  A court considering a motion for summary judgment evaluates all underlying facts and inferences in the light most favorable to the nonmovant, *Liberty Lobby*, 477 U.S. at 255, and "eschew[s] making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

When a motion under Rule 41(g) is made after criminal proceedings have terminated and the government has failed to either forfeit or return the property, the motion is construed as a civil complaint requesting equitable relief in the form of the property's return.  *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (collecting cases that stand for the proposition that a post-trial 41(g) motion must be "treat[ed] . . . as a civil complaint governed by the Federal Rules of Civil Procedure").  Property seized in the course of an investigation must be returned at the close of criminal proceedings or civil forfeiture proceedings unless it is (1) contraband, (2) needed as evidence, or (3) properly forfeited by the government.  *United States v. Farrell*, 606 F.2d 1341, 1347 (D.C. Cir. 1979).

### III. DISCUSSION

In its motion for summary judgment, the government has provided the evidence missing from its previous motion and proceeded under the appropriate procedural posture.[3]  The government now asserts that it "never possessed" any of the 27 remaining items, that the documents associated with the searches support its position that it never seized the items in question, and that plaintiff has failed to present any evidence that the government "currently

---

[3] The government has fashioned its motion as a "Renewed Motion to Dismiss or, in the Alternative, for Summary Judgement."  The government's filing is best construed as a motion for summary judgment because of its reliance on documents lying outside of the pleadings.  *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

possesses or previously possessed the twenty-seven unaccounted items." Gov't's Reply in Supp. of Renewed Mot. to Dismiss or, in the Alternative, for Summary Judgment ("Gov't's Reply") at 2, ECF No. 47; *see also* Gov't's Mot. at 3–4.  For support, the government has submitted a declaration from DEA Task Force Officer Matthew Albertson, who has reviewed the records of DEA's investigation of Ford-Bey and determined that "no record" of the 27 remaining items can be found "in any DEA report." Gov't's Mot. at 3 (quoting Gov't's Mot., Att. 1, Declaration of DEA Task Force Officer Matthew Albertson ("Albertson Decl.") ¶ 10, ECF No. 40-1). The government declarant examined the corresponding DEA reports of investigation, search warrant returns, return receipts for items returned to plaintiff's mother, photographs related to the searches, and itemized lists of the watches and jewelry seized. Albertson Decl. ¶¶ 7–8, 10, 12. The government attached each of these documents, other than the photographs, as exhibits to its motion. *See* DEA ROI; Gov't's Mot., Ex. C ("Return Receipts"), ECF No. 40-4; Gov't's Mot., Ex. D ("Search Warrant Returns"), ECF No. 40-5; Gov't's Mot., Ex. E ("Watch and Jewelry Documents"), ECF No. 40-6.

Plaintiff argues that a genuine dispute of material fact remains over the status of the items, speculating, alternatively, that (1) the government has the items and simply cannot locate them; (2) the government seized but later destroyed the items; or (3) government agents wrongfully took the items. Pl.'s Opp'n to Gov't's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pl.'s Opp'n") at 2–3, ECF No. 44. He asserts that the government's submitted declaration "clearly suggests that the government seized [the remaining items]." *Id.* at 3.[4] More specifically, he asserts that the agents "initially listed and itemized the now missing 27

---

[4] Defendant also argues that government's initial search warrant was defective and that the search of his apartment was carried out in violation of the law. *Id.* at 3–7; Pl.'s Surreply in Opp'n to Gov't's Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pl.'s Surreply") at 3, ECF No. 48; Pl.'s Mot. to Take Judicial Notice ("Pl.'s 2nd Surreply") at 2–4, ECF No. 51. The validity of the warrant supporting the search is

9

items," that they were under the sole control of the government, and that "*every piece* of property [in his apartment] was itemized and taken by the government." Pl.'s 2nd Surreply at 2–5.

Plaintiff has also submitted pages of receipts "as proof that he frequented the high end stores" from which he claims to have purchased the missing items. *Id.* at 2; *see, generally,* Pl.'s Second Errata Notice ("Pl.'s Receipts"), ECF No. 49. While these receipts do not list the specific items plaintiff seeks to obtain, he posits that frequently purchasing items from the stores makes more likely that he lawfully possessed the items on his list. Pl.'s 2nd Surreply at 3. This is a leap too far from concrete evidence to rank supposition based on a weak assumption.

By contrast, the government has presented sufficient evidence to meet its burden at summary judgment. With the submission of DEA reports of investigation, the search warrant returns, the itemized lists of seized jewelry and watches, and the Albertson Declaration contextualizing these documents, no genuine dispute of material fact exists over whether the government seized and currently possesses the remaining 27 items. The government did not seize nor currently possesses the remaining items. None of the four DEA reports of investigation or two search warrant returns—including those from the search of plaintiff's apartment, from which he alleges the items were taken—lists any of the 27 items that plaintiff claims are still in the government's possession, strong evidence that the government never seized the items in any of its searches.[5] Moreover, the search warrant return for the key August 17, 2012 search of

---

irrelevant to the question here of whether the government is in possession of seized property that it must return. *See* Gov't's Reply at 4–5 (citing FED. R. CRIM. P. 41(g)). If the government is in possession of the property that was not (1) contraband, (2) forfeited, or (3) subject to retention pending trial, the government would have to return the property even if it had been seized in a lawful search. *See Farrell*, 606 F.2d at 1347.

[5] The government seized property from plaintiff on four instances: (1) during a controlled delivery on August 17, 2012, DEA ROI at 1–11; (2) pursuant to the execution of a search warrant of plaintiff's Washington, D.C., residence on August 17, 2012, *id.* at 12–21; (3) pursuant to the execution of a search warrant of plaintiff's girlfriend's residence on August 18, 2012, *id.* at 22–27; and (4) during the arrest of plaintiff on August 16, 2013, *id.* at 28–29. Plaintiff says that the 27 remaining items were taken from his residence, searched on August 17, 2012. Pl.'s Opp'n at 3; Pl.'s 2nd Surreply at 1.

plaintiff's apartment states that the property taken from the premises pursuant to the warrant included only "Documents; Assorted watches; Assorted jewelry; Ipad; $588 in cash; Glock .357." Search Warrant Returns at 1.[6] The "assorted watches" and "assorted jewelry" are itemized in the government's seizure forms describing the items in the relevant exhibit, and all of these items were forfeited. Watch and Jewelry Documents at 18–19 (listing the items in exhibit N-200, consisting of the "Assorted Watches and Jewelry" seized from plaintiff's apartment).

Plaintiff's assertion to the contrary—that the government's evidence "clearly suggests that the government seized [the remaining items]," Pl.'s Opp'n at 3—might be taken to refer to the references to "watches" and "jewelry" in the DEA reports of investigation, *see* DEA ROI at 14, 23, and the search warrant returns, Search Warrant Returns at 1, 13, associated with the searches.[7] The remaining items on plaintiff's list include four pieces of jewelry. *See* Pl.'s List nos. 12, 22, 23, 26. The government has submitted itemized lists of the jewelry and watches seized in its searches, and none reflects any of the 27 remaining items on plaintiff's list. Watch and Jewelry Documents at 9–10, 18–20. Furthermore, all of the watches and jewelry on the government's seizure list were subject to administrative forfeiture. Watch and Jewelry Documents at 6, 8–9, 16, 17–19. As explained in the Court's earlier opinion, any claim as to these items is time-barred. *Ford Bey*, 2020 WL 32991, at *9. Therefore, the identity of the document plaintiff believes "initially listed and itemized the now missing 27 items," Pl.'s 2nd

---

[6] The inventory of seized property from the search of plaintiff's girlfriend's apartment lists "Misc hand bags; Records and Documents Misc; Records and Documents Financial; Misc Pictures; Misc Jewelry; Alabama ID; IPad; Cashier Check $2,105.00." Search Warrant Returns at 13. The jewelry seized in this search was also inventoried and forfeited. Watch and Jewelry Documents at 8–9. 16.

[7] Plaintiff argues that the government has "admit[ted] to having seized and itemize[ed] the 27 remaining items," Pl.'s Opp'n at 3; *see also* Pl.'s 2nd Surreply at 4, but the government maintains that the items were never in its possession, Gov't's Reply at 2.

Surreply at 2, is wholly unclear.  In short, the relevant property is absent from the government documents describing the evidence seized in DEA's searches.[8]

Plaintiff further argues that an evidentiary hearing would "reveal that the government was the *only* authority who had total control of plaintiff's apartment and subsequent [sic] property by placing a padlock on the plaintiff's apartment and denying entry even to the apartment building's management team . . . until *every piece* of property was itemized and taken by the government." Pl.'s 2nd Surreply at 3–4; *see also* Pl.'s Mem. at 2 (suggesting that the government seized all of the contents of his apartment).  Plaintiff does not provide a basis for this assertion, however, let alone present evidence supporting his claim that the government "had total control of plaintiff's apartment" and emptied it of "*every piece* of property."  Pl.'s 2nd Surreply at 3–4.  Plaintiff says that his brother and godson were present at the apartment during the search and "witnessed the plaintiff's apartment ransacked and searched," *id.* at 3, but plaintiff does not claim that his characterization of the government's search came from these individuals, nor does he present an affidavit, declaration, or other evidence to support his characterization of the search and seizure.[9]  Plaintiff was, as noted before, a fugitive at the time of the search and does not appear to have personal knowledge of what transpired.  Plaintiff's bare assertion that all of his property was

---

[8]  The district court's forfeiture order also includes "$24,565.00 in Assorted Clothing." Forfeiture Order at 4.  It is unclear what relationship these items have with the clothing items plaintiff claims were seized from him.  Pl.'s List nos. 32–48.  Neither the government nor plaintiff has described whether the clothing listed in the forfeiture order as "subject to forfeiture" was actually processed through forfeiture proceedings.  None of the specific items of clothing on the forfeiture list clearly match those on plaintiff's list, though the list in the forfeiture order is notably non-exhaustive and plaintiff's list contains a general category of "Several other [items of clothing]."  The records provided by the government, however, indicate that no clothing was seized during the search of plaintiff's apartment.  DEA ROI at 19–21; Search Warrant Returns at 1.

[9]  Plaintiff has presented an affidavit from his brother, but in describing the search, the affidavit merely states that "the apartment was in disarray, and trashed as if it had been searched."  Affidavit of Moab Ford-Bey in Supp. of Pl.'s Rule 41 Mot. ¶ 11, ECF No. 25.  It says nothing about the seizure of plaintiff's possessions.

seized does not create a genuine dispute of material fact to counter the evidence presented by the government.[10]

Further, plaintiff's lengthy receipt list of his pre-arrest shopping does not create a genuine dispute of material fact. First, as plaintiff seems to concede, Pl.'s 2nd Surreply at 2, the receipts do not show that plaintiff ever possessed the missing items but rather that he frequently bought items from some of the stores from which he allegedly also bought the 27 missing items on the list. *Compare* Pl.'s List *with* Pl.'s Receipts. Plaintiff's "Receipts for Versace Boutique Purchases," Pl.'s Receipts at 4–16, do not show that plaintiff actually purchased the precise Versace item on the list of remaining items, Pl.'s List no. 28. The same is true of plaintiff's "Receipts for Gucci Boutique Purchases," Pl.'s Receipts at 17–41, and "Receipts for Louis Vuitton Boutique Purchases," *id.* at 42–54. None of the specific items purchased are listed on the receipts.

More importantly, even if plaintiff had presented evidence that he had purchased the 27 items, this would still be far short of showing that government agents seized the items during their August 17, 2012 search of plaintiff's apartment, failed to report those items on the DEA report of investigation and search warrant return, and that those items are currently in the possession in the government. Even if plaintiff owned the items in question, there would be no genuine dispute of material fact regarding whether they were seized by, and currently in the possession of, the government.

---

[10] Plaintiff also "requests an evidentiary hearing to show with the government's own records that relief in the form of a monetary equivalent is due to the plaintiff going forward," Pl.'s Opp'n at 7, and more specifically, to place the agents involved under oath to testify to whether they confiscated and itemized the 27 missing items, Pl.'s 2nd Surreply at 2–3. Plaintiff has produced no evidence, however, that he ever possessed the missing items or that the government seized them, as he must to survive summary judgment. *See* FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.").

In a last gasp effort for some relief, plaintiff also asserts that he is entitled to monetary compensation if the government seized his property, even if the government does not have the 27 remaining items in its position. The doctrine of sovereign immunity, however, bars the award of money damages to replace items seized by the government but no longer in its possession. *See Bailey v. United States*, 508 F.3d 736, 740 (5th Cir. 2007). Even if a material dispute of fact existed over whether DEA agents seized the property and then somehow lost it, plaintiff would be unable to obtain relief because no evidence suggests that the property is in the government's possession. Plaintiff cites *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1204–05 (10th Cir. 2001), for the proposition that return of the "monetary equivalent" of improperly seized property might be available under Rule 41(g) and, presumably in this civil action, Pl.'s Opp'n at 6, but this line is dicta in a standing analysis and provides no legal support for the position that monetary relief is available here. In the second case plaintiff cites, the plaintiff was seeking the return of seized funds, not monetary damages for the seizure of personal items. *Id.* (citing *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154 (2d Cir. 1994)).

In sum, the government's proof overcomes plaintiff's speculative allegations that items seized from him in connection with the investigation into his criminal conduct were not properly forfeited by, or are available to recover from, the government.

### IV. CONCLUSION

For the foregoing reasons, the government's motion for summary judgment is GRANTED. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: December 16, 2020

                                                                             _____
                                                                             BERYL A. HOWELL
                                                                             Chief Judge